1
2
3
4
5
6
7
8
9

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

LARRY C.,[1]

        Plaintiff,

v.

MARTIN O'MALLEY,

        Defendant.

Case No. 2:24-cv-00089-BNW

**ORDER**

10      This case involves review of an administrative action by the Commissioner of Social
11  Security denying Larry C.'s application for disability benefits under Title II and Title XVI of the
12  Social Security Act. The Court reviewed Plaintiff's Motion for Reversal and/or Remand (ECF
13  No. 18), the Commissioner's Cross-Motion to Affirm and Response (ECF No. 20), and
14  Plaintiff's Reply (ECF No. 21). For the reasons discussed below, the Court grants Plaintiff's
15  Motion and remands for further proceedings.

16  **I.  BACKGROUND**
17      On June 28, 2019, Plaintiff filed for disability insurance benefits under Title II of the
18  Social Security Act as well as supplemental security income under Title XVI, alleging an onset
19  date of July 1, 2017. ECF No. 13-1 at 37.[2] Plaintiff's claim was denied initially and upon
20  reconsideration. *Id.*
21      A hearing was held before Administrative Law Judge ("ALJ") David Gatto on September
22  6, 2022. *Id.* On October 27, 2022, ALJ Gatto found that Plaintiff was not disabled. *Id.* at 46.
23  Plaintiff appealed that decision to the Appeals Council, which denied her request on November
24  15, 2023. *Id.* at 6. Plaintiff then commenced this action for judicial review under 42 U.S.C.

---

[1] In the interest of privacy, this opinion only uses the first name and last initial of the nongovernmental party.

[2] ECF No. 13 refers to the Administrative Record in this matter which, due to COVID-19, was electronically filed. All citations to the Administrative Record will use the CM/ECF page numbers.

1  § 405(g) on January 11, 2024. *See* ECF No. 1.

2  **II.     STANDARD OF REVIEW**

Administrative decisions in Social Security disability-benefits cases are reviewed under 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which [s]he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action. . . brought in the district court of the United States for the judicial district in which the plaintiff resides." The Court may enter "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

The Commisioner's findings of fact are conclusive if supported by substantial evidence. *See id.*; *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, the Court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F. 3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). When the evidence supports more than one rational interpretation, the court must defer to the

Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health & Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, the issue before the Court is not whether the Commissioner could have reasonably reached a different conclusion, but whether the final decision is supported by substantial evidence. *Burch*, 400 F.3d at 679. It is incumbent on the ALJ to make specific findings so that the Court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981). Mere cursory findings of fact without explicit statements as to what portions of the evidence were accepted or rejected are not sufficient. *Id.* The ALJ's findings "should be as comprehensive and analytical as feasible, and where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Id.*

### A. Disability evaluation process and the ALJ decision

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected. . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The individual also must provide "specific medical evidence" in support of her claim for disability. 20 C.F.R. § 404.1514. If the individual establishes an inability to perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at any step the ALJ determines that she can make a finding of disability or non-disability, a determination will be made, and no further evaluation is required. *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

Step one requires the ALJ to determine whether the individual is engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). If the individual is engaged in SGA, the

3

ALJ will make a finding of non-disability. If the individual is not engaged in SGA, then the analysis proceeds to step two.

Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits her from performing basic work activities. *Id.* § 404.1520(a)(4)(ii). If the individual does not have a severe medically determinable impairment or combination of impairments, then the ALJ makes a finding of non-disability. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* § 404.1520(a)(4)(iii). If the individual's impairment or combination of impairments meets or equals the criteria of a listing and the duration requirement, then the ALJ makes a finding of disability. *Id.* § 404.1520(d). Otherwise, the analysis proceeds to step four.

However, before moving to step four, the ALJ must first determine the individual's residual functional capacity ("RFC"), which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. § 404.1560; *see also* SSR 96-8p. In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1545. To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

Step four requires the ALJ to determine whether the individual has the RFC to perform her past work ("PRW"). 20 C.F.R. § 404.1520(a)(4)(iv). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy

within the last 15 years. The work also must have lasted long enough for the individual to learn the job and to have performed an SGA. If the individual has the RFC to perform her past work, then the ALJ makes a finding of non-disability. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

The fifth and final step requires the ALJ to determine whether the individual can do any other work considering her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If she can do other work, then the ALJ makes a finding of non-disability. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence demonstrating that other work exists in significant numbers in the economy that the individual can do. *Yuckert*, 482 U.S. at 141–42.

*Here*, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 1, 2017, the alleged onset date. ECF No. 13-1 at 40.

At step two, the ALJ concluded that Plaintiff had the following severe impairments: mild osteoarthritis of the bilateral upper extremities; degenerative disc disease/degenerative joint disease of the lumbosacral spine with lower back, right hip, and neck pain secondary to myofascial pain syndrome and possible traumatic facet arthropathy; chronic obstructive pulmonary disease, unspecified/asthma (with acute exacerbation), history of headaches status post cerebrovascular accident/aneurysm; and degenerative disc disease of the cervical spine with neck pain and headaches. *Id.*

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 40–41.

Before moving to step four, the ALJ concluded that Plaintiff had the RFC to perform light work but with the following limitations:

occasional climbing of ramps and stairs; no climbing ladders, ropes, or scaffolds, occasional balancing, stopping, kneeling, and crouching; no crawling; no exposure to temperature extremes; no exposure to vibration, no concentrated exposure to fumes, smoke, dusts, gases, and poor ventilation; no work around hazards such as unprotected heights and dangerous moving machinery; and, to work in an environment with a moderate noise level such as found in an office or retail setting.

*Id.* at 41.

At step four, the ALJ found that Plaintiff could perform his PRW as a telephone solicitor. *Id.* at 45.

At step five, the ALJ found that Plaintiff has not been under a disability from July 1, 2017, to the date of the decision. *Id.* at 45–46.

### III. ANALYSIS

**A. The ALJ's RFC determination is not supported by substantial evidence**

Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence because no medical expert assessed his limitations. ECF No. 18 at 10. He asserts that because the state agency consultants found insufficient evidence to assess his functional limitations, the ALJ improperly interpreted raw medical data which he, as a layperson, was not qualified to do. *Id.* at 10–11; ECF No. 21 at 5–6. The Commissioner responds that the ALJ was capable of independently reviewing and forming conclusions about the medical evidence and did so here. ECF No. 20 at 5–6. Thus, the Commissioner argues, the ALJ's decision is supported by substantial evidence because Plaintiff failed to demonstrate that the ALJ's interpretation of the evidence was irrational. *Id.* at 6.

An ALJ is not required to obtain a medical RFC opinion for the ALJ's RFC assessment to be supported by substantial evidence. *Bufkin v. Saul*, 836 F. App'x 578, 579 (9th Cir. 2021) ("ALJs need not seek the opinion of a medical expert every time they review new medical evidence and make an RFC determination."); *Rivera v. Berryhill*, No. ED CV 16-791-SP, 2017 WL 5054656, at * 4 (C.D. Cal. Oct. 31, 2017) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1102–03 (9th Cir. 1999)) (absence of a medical opinion is "not necessarily fatal" to an ALJ's RFC

assessment); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."). But while "[t]he Social Security Act provides no guidance on how the agency should evaluate medical evidence," *Woods v. Kijakazi*, 32 F.4th 785, 790 (9th Cir. 2022), "[t]he ALJ must set out in the record his reasoning and evidentiary support for his interpretation of the medical evidence." *Tackett*, 180 F.3d at 1102.

Moreover, an ALJ, as a lay person, cannot "act as his own medical expert" in "interpreting raw medical data in functional terms." *Padilla v. Astrue*, 541 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008) (ALJ is not qualified to extrapolate functional limitations from raw medical data); *Miller v. Astrue*, 695 F. Supp. 2d 1042, 1048 (C.D. Cal. 2010) (it is improper for the ALJ to act as the medical expert); *Vaughn v. Berryhill,* 242 F. Supp. 2d 998, 1008 (E.D. Cal. 2017) ("[A]n ALJ is not allowed to use his own medical judgment in lieu of that of a medical expert."). Thus, several courts have found remand warranted where the ALJ relied on his own judgment in assessing the RFC without the support of any medical opinion evidence. *See, e.g.*, *Holtan v. Kijakazi*, No. 2:22-cv-01222-VCF, 2023 WL 2424648, at *3 (D. Nev. Mar. 9, 2023); *Walker v. Comm'r of Soc. Sec.*, No. 2:22-cv-01871-EJY, 2024 WL 64784, at *6 (D. Nev. Jan. 4, 2024); *Osborne v. Comm'r of Soc. Sec.*, No. 1:22-cv-01538-EPG, 2024 WL 1312202, at *3 (E.D. Cal. Mar. 27, 2024).

Here, the ALJ's RFC determination is not supported by substantial evidence. While the ALJ summarized the medical evidence, it is not entirely clear how the ALJ then translated that evidence into an RFC because he did not set forth his reasoning. *See Tackett*, 180 F.3d at 1102; *Holtan*, 2023 WL 2424648, at *3. And because both state agency medical consultants found insufficient evidence to assess Plaintiff's functioning, ECF No. 13-1 at 43, the ALJ based Plaintiff's RFC assessment on his own interpretation of raw medical evidence such as MRIs and CT scans. *See, e.g.*, *id.* at 533–34, 537–38, 540–45, 569–70, 607–10, 613–16, 786–87, 788–89; 799–806, 884, 903, 915. Thus, this "was not a matter of the ALJ synthesizing all the medical evidence and opinions to reach his own RFC determination." *Rivera*, 2017 WL 5054656, at *5.

1  Instead, he "formulated an RFC based on his interpretation of the MRIs [and CT scans] and not
2  on medical judgment, which is improper." *Id.*
3        This error is not harmless because the ALJ's improper lay interpretation directly led to
4  his conclusion that Plaintiff was not disabled. *Walker*, 2024 WL 64784, at *6. The Court
5  therefore remands the case for further proceedings. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775
6  F.3d 1090, 1107 (9th Cir. 2014) (remand is proper where further administrative proceedings are
7  necessary to resolve outstanding issues).

    **B. The ALJ failed to provide specific, clear, and convincing reasons for discounting Plaintiff's headache testimony**

10        The parties dispute whether the ALJ provided specific, clear, and convincing reasons in
11  discounting Plaintiff's subjective symptom testimony, particularly regarding his headache
12  testimony. *Compare* ECF No. 18 at 5–9 *with* ECF No. 20 at 3–5.
13        In determining whether a claimant's testimony regarding subjective pain or symptoms is
14  credible, the ALJ engages in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th
15  Cir. 2014). First, the ALJ must determine whether the claimant has presented objective medical
16  evidence of an underlying impairment which could reasonably be expected to produce the pain
17  or other symptoms alleged. *Id.* (internal citation and quotation omitted). The claimant is not
18  required to show that her impairment "could reasonably be expected to cause the severity of the
19  symptom she has alleged; she need only show that it could reasonably have caused some degree
20  of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quoting *Lingenfelter v.
21  Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007)).
22        If the claimant satisfies the first step of the analysis, and there is no evidence of
23  malingering, the ALJ can reject the claimant's testimony about the severity of their symptoms
24  "only by offering specific, clear, and convincing reasons for doing so." *Id.* (internal citation and
25  quotation omitted). General findings are insufficient; rather, the ALJ must identify what
26  symptom claims are being discounted and what evidence undermines these claims. *Id.* (citation
27  omitted); *Thomas,* 278 F.3d at 958 (requiring the ALJ to sufficiently explain why they

28                                                          8

discounted the claimant's symptom claims). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). That said, if the ALJ's credibility finding is supported by substantial evidence in the record, the Court may not engage in second-guessing. *Thomas*, 278 F.3d at 959.

Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of his reported symptoms." ECF No. 13-1 at 42. However, the ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* The ALJ cited noncompliance with treatment, daily activities, and objective medical evidence to discount Plaintiff's symptom testimony. *Id.* at 42–50. The Court addresses each in turn.

### 1. *Noncompliance with Treatment*

The ALJ did not credit Plaintiff's testimony, in part, because he was noncompliant with heart treatment. *Id.* at 43. The Commissioner contends that Plaintiff's failure to follow a prescribed course of treatment undermined his allegations because if his conditions were as severe as he claimed, he would do everything possible to treat them. ECF No. 20 at 4. But Plaintiff asserts that the ALJ's statement that he was noncompliant with heart treatment is not a sufficient reason for rejecting his headache testimony because the ALJ did not identify which evidence undermined which particular testimony. ECF No. 21 at 4.

An unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be considered when evaluating the claimant's subjective symptoms. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). And evidence of a claimant's self-limitation and lack of motivation to seek treatment are appropriate considerations in determining the credibility of a claimant's subjective symptom reports. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165–66 (9th Cir. 2001).

Here, the ALJ noted that Plaintiff continued to smoke cigarettes despite his heart disease,

9

that Plaintiff was recommended left-heart catheterization and selective coronary angiography, that his heart disease was controlled with medication, and that he was noncompliant with follow-ups and strongly advised to schedule a cardiology consult and echocardiogram. ECF No. 13-1 at 43. The ALJ also later stated that Plaintiff's conservative treatment was "not consistent" with "such extreme limitations." *Id.* at 44.

However, as Plaintiff correctly notes, the ALJ did not explain how Plaintiff's noncompliance with heart treatment undermined his headache testimony. And in the portion of the opinion where the ALJ discusses noncompliance, it proceeds simply as a summary of the medical evidence, without the ALJ specifically stating that he viewed it as undermining Plaintiff's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (summarizing the medical evidence supporting an RFC determination is not a specific, clear, and convincing reason for discounting testimony). The ALJ later vaguely concluded that "conservative treatment" was inconsistent with Plaintiff's allegations, but he did not explain which limitations were undermined by such treatment. So although there may be "reasonable inferences drawn from the ALJ's summary of the evidence, the credibility determination is exclusively the ALJ's to make, and [the Court's] only to review." *Id.* And the Court is "constrained to review the reasons the ALJ asserts." *Id.* (citation omitted). As such, this was not a specific, clear, and convincing reason for rejecting Plaintiff's headache testimony.

### 2. Daily Activities

The ALJ also discounted Plaintiff's symptom testimony because he found that Plaintiff's daily activities reflect a "a significant functional capacity and not an individual unable to sustain regular and continuing work." ECF No. 13-1 at 44. But Plaintiff argues that the ALJ simply concluded that Plaintiff's daily activities undermined his claimed limitations without explaining which activities contradicted which testimony. ECF No. 18 at 8.

A plaintiff can be found disabled even if he is able to perform some activities of daily living. *See Garrison*, 759 F.3d at 1016. However, an ALJ can discredit a claimant's testimony when the claimant reports participation in activities that are "inconsistent with the alleged

10

severity of her limitations." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 112–13 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a) (citations omitted).

The Ninth Circuit also recognized that "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) *superseded on other grounds by* 20 C.F.R. § 404.1502(a). "The ALJ must make specific findings relating to the daily activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Orn*, 495 F.3d at 639 (internal quotations and citation omitted).

Here, neither of the two justifications for discounting Plaintiff's symptom testimony based on daily activities are present. The ALJ did not identify Plaintiff's daily activities, nor explain how they undermined the claimed extent of his limitations. *See Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014) ("the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints"). The ALJ also did not articulate how Plaintiff's daily activities would be transferrable to the workplace and because "daily activities" are mentioned devoid of context, it is not apparent that Plaintiff spends a "substantial" part of his day engaging in such activities. *See Ghanim v. Colvin*, 763 F.3d at 1165 ("However, there is no indication here that the limited activities Ghanim engaged in, often with the help of a friend, either comprised a 'substantial' portion of Ghanim's day, or were 'transferrable' to a work environment."). Thus, this was not a specific, clear, and convincing reason for discrediting Plaintiff's testimony.

### 3. *Objective Medical Evidence*

Finally, the ALJ pointed to the objective medical evidence as a reason for not crediting Plaintiff's headache testimony. ECF No. 13-1 at 45. Plaintiff contends that because the ALJ

11

1  failed to provide other adequate reasons for discrediting his testimony, the ALJ's claim that the
2  extent of Plaintiff's symptoms is not fully corroborated by the objective medical evidence cannot
3  be the sole basis for discounting his testimony. ECF No. 18 at 7. The Commissioner responds
4  that this was a proper reason for discrediting his testimony because the objective medical
5  evidence was inconsistent with his testimony. ECF No. 20 at 4–5.

6        Plaintiff is correct that the ALJ "may not reject a claimant's subjective complaints based
7  solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch*,
8  400 F.3d at 680. "This means that an ALJ cannot effectively render a claimant's subjective
9  symptom testimony superfluous by demanding positive objective medical evidence 'fully
10 corroborat[ing]' every allegation within the subjective testimony." *Smartt*, 53 F.4th at 495. But
11 "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective
12 testimony, the ALJ may indeed weigh it as undercutting such testimony." *Id.* at 498 (emphasis in
13 original).

14       Here, the ALJ found that Plaintiff's "contentions regarding the severity and the related
15 functional restrictions are not supported." ECF No. 13-1 at 45. However, in explaining such a
16 finding, the ALJ did not point to specific testimony that was undermined or contradicted by the
17 objective medical evidence. Instead, regarding Plaintiff's headache testimony, the ALJ noted that
18 Plaintiff "was advised that there was no abnormality on his head CT or sinus CT that would
19 explain his headache symptoms." *Id.* at 45. But this simply means that the ALJ found that the
20 objective medical evidence did not "fully corroborate" Plaintiff's symptoms. *Burch*, 400 F.3d at
21 680. And although the ALJ also stated that the "findings specified within the RFC assessment are
22 more consistent with the appropriate medical findings and the overall evidence in file than the
23 allegations made by" Plaintiff, ECF No. 13-1 at 45, this amounts to a summary of the medical
24 evidence supporting his RFC determination, which is not a specific, clear, and convincing reason
25 for rejecting Plaintiff's symptom testimony. *Brown-Hunter*, 806 F.3d at 494.

      \* \* \*

27       The ALJ only made a general credibility finding and never identified *which* particular

testimony he found not credible and never explained how the evidence contradicted that testimony. *Id.* This error was not harmless as the ALJ did not provide enough reasoning for the Court to meaningfully review. *Id.* Moreover, another ALJ crediting Plaintiff's symptom testimony could have reached a different disability determination, likewise rendering the error not harmless. *Stout*, 454 F.3d at 1055–56.

Though Plaintiff asks the Court to "credit [his] headache testimony and remand for further proceedings," he acknowledges that no off-task limitation was posed to the vocational expert in terms of his headaches. ECF No. 18 at 9. This case therefore does not fit in with the category of cases in which the credit-as-true test was satisfied. *See, e.g.*, *Trevizo v. Berryhill*, 871 F.3d 664, 683 (9th Cir. 2017) (vocational expert "specifically opined" about potential limitations); *Garrison*, 759 F.3d at 1022 (same); *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (vocational expert testimony "clearly established" claimant could not perform any substantial gainful work). As such, the Court remands the case for further proceedings.

## IV.   CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Reversal and/or Remand (ECF No. 18) is **GRANTED** consistent with this Order.

**IT IS FURTHER ORDERED** that the Commissioner's Cross-Motion to Affirm (ECF No. 20) is **DENIED**.

**IT IS FURTHER ORDERED** that the case is remanded for additional development of the record and informed medical opinions regarding Plaintiff's functional limitations. On remand, the ALJ should also consider the context and limitations of Plaintiff's daily activities, the nature of his treatment regimen, Plaintiff's subjective symptom testimony, and any other part of the decision as necessary considering the updated record on remand, including Plaintiff's RFC and any hypotheticals given to the vocational expert.

/ / /

/ / /

/ / /

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to enter judgment in favor of Plaintiff and close this case.

DATED this 17th day of September 2024.

_____
BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE